[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiff Sash Storm, Inc. appeals from the judgment of the Allen County Court of Common Pleas rendered July 9, 1998. The court's judgment entry indicates that it granted a permanent injunction to Sash Storm, based on a modification of the noncompetition agreement between Sash Storm and appellees Richard G. Thompson, James Bryan and Steve Sdao.
Sash Storm is in the business of selling and installing storm windows, and appellees are former employees of appellant. During the period of their employment, appellees all signed agreements with Sash Storm promising not to divulge any trade secrets or other confidential information, and also not to compete with Sash Storm's business for a period of one year within a fifty-mile radius upon a termination of employment. On March 21, 1997, appellees quit their jobs with Sash Storm and formed their own business to engage in direct competition with Sash Storm. Sash Storm filed a complaint for damages and an injunction on March 25, 1997.
This Court has reviewed the instant case on two previous occasions. In the first appeal, we reversed the June 9, 1997 judgment of the trial court denying a permanent injunction. Sash Storm, Inc. v. Thompson (Dec. 22, 1997), Allen App. No. 1-97-43, unreported (Sash Storm I). We determined that the court had based its denial of the injunction on the erroneous conclusion that the non-compete agreement at issue was not supported by consideration. We determined that in the context of at-will employment, where an employee and an employer enter into a noncompetition agreement subsequent to the commencement of the relationship and the employee remains employed for a substantial period after the signing, the continued employment is sufficient consideration to support the agreement as a matter of law. Accordingly, we remanded the case to the trial court to determine whether the noncompetition agreement was enforceable under the test set forth in Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21.
On February 6, 1998, the trial court filed an entry concluding that the noncompetition agreement was unenforceable. In Sash Storm v. Thompson (June 17, 1998), Allen App. No. 1-98-06, unreported (Sash Storm II), we observed that the trial court had apparently disregarded our conclusion that the covenant was supported by sufficient consideration, but concluded that the entry was a not a final appealable order and dismissed the appeal.
On July 9, 1998, the trial court filed a third judgment entry. In this entry, the court incorporates and amends its June 9, 1997 judgment entry to comply with our decision in Sash Storm and purports to "again" apply the standard of Raimonde v. VanVlerah to analyze the covenant. However, the court apparently believed that because it found that Sash Storm "has no trade secrets or other confidential information" in the possession of the appellees that Sash Storm has no interests protectable by a covenant not to compete:
 In the instant case the Court finds Sash Storm has no trade secrets or other confidential information which should reasonably and legitimately be protected through a covenant not to compete, except possibly the customer list which it was never sufficiently proven that defendants have in their possession.
Based on this mixed finding of fact and law, the court then purports to reform the noncompetition agreement in conformance with the rule of reasonableness established in Raimonde v. VanVlerah to protect what it deems Sash Storm's "minimal" interests:
 the Court hereby modifies and/or enforces the "Confidentiality Agreement" only to the extent to protect Sash Storm's minimal interest, to wit: Defendants, Richard G. Thompson, James Bryan and Steve Sdao are permanently restricted from using, if they have it, any customer list of plaintiff and further to return any customer list generated by plaintiff, if they have same.
The trial court's judgment thus denies the injunction except as applied to a limited circumstance and contingency surrounding a customer list. Sash Storm appeals and asserts the following assignments of error:
 THE TRIAL COURT ERRED IN RULING THAT THE AGREEMENT OF THE PARTIES IS NOT ENFORCEABLE AND THEREBY DENYING THE PLAINTIFF'S DEMANDS FOR PRELIMINARY AND PERMANENT INJUNCTION.
 THE TRIAL COURT'S PROTECTIVE ORDER REFUSING TO ALLOW DISCOVERY TO MOVE FORWARD IN THIS CASE WAS AN ABUSE OF ITS DISCRETION.
Appellant's first assignment of error deals with the trial court's denial of requested injunctive relief. We note that there are special standards for granting injunctive relief in the context of anticompetition agreements:
 In resolving whether to issue an injunction . . . a trial court must engage in a tripartite test. The first element consists of determining whether the covenant not to compete is valid; the second requires the application of a rule of reasonableness in order to decide if the covenant is enforceable. Finally, the court must find that the party seeking the injunctive relief proved actual irreparable harm . . . [or] the threat of actual or irreparable harm.
 Restivo v. Fifth Third Bank of Northwestern Ohio, N.A. (1996),113 Ohio App.3d 516, 523 (Resnick, P.J. dissenting), citing Levine v.Beckman (1988), 48 Ohio App.3d 24, 27.
The first prong of the inquiry examines whether the agreement meets the formal requirements of a contract: offer, acceptance and consideration. The second prong applies the rule of reasonableness enunciated by the Ohio Supreme Court in Raimonde v.Van Vlerah (1975), 42 Ohio St.2d 21, paragraphs one and two of the syllabus, to determine whether and to what extent the agreement is enforceable. The third prong requires clear and convincing evidence of actual irreparable harm or the threat of such harm. Only when all three prongs are satisfied will an injunction be granted.
In Sash Storm I, we held that the agreement at issue here was supported by consideration and thus formally valid, satisfying the first prong of the test. The trial court has now determined that the covenant as written was unenforceable under the second prong of the test, and proceeded to use the "rule of reasonableness" to "reform" the covenant "to protect the interests of Sash Storm."
The second prong of the test for an injunction, the rule of reasonableness, is actually a test unto itself. In Raimonde, the Supreme Court held:
 A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interest.
 A covenant restraining an employer from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.
 Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21, paragraphs one and two of the syllabus.
Here, the court has purported to apply the Raimonde test in reaching its determination that the covenant is unenforceable. However, the court has not explicitly analyzed each of the three factors under the test. Instead, the trial court apparently concluded that because Sash Storm, Inc. had "no trade secrets or other confidential information which should reasonably and legitimately be protected through a covenant not compete," that the covenant was per se unreasonable and that an analysis under the three factors was unnecessary.
We believe that the trial court misunderstood the appropriate legal standard: that is, which interests may "reasonably and legitimately be protected" by a noncompetition agreement. Although the trial court correctly perceived that trade secrets and confidential information are protectable under such an agreement, see e.g. Levine, 48 Ohio App.3d at 28, they are by no means the only interests which may be protected. In Rogers v.Runfola Associates, Inc. (1991), 57 Ohio St.3d 5, the Supreme Court observed:
 [The employer] Runfola invested time and money in equipment, facilities, support staff and training. Much of this training and support, undoubtedly, inured to the benefit of the appellees [the employees]. Runfola also developed a clientele with which appellees had direct contact. Appellees' assignments were taken under the Runfola name. Indeed, Runfola has a legitimate commercial interest to protect.
 Id. at 8-9. We believe that the analysis set forth by the Supreme Court is directly applicable to the present case. The evidence at the several injunction hearings clearly indicated that defendants had no experience in the field of window sales prior to their employment with Sash Storm, and that Sash Storm invested significant time and effort training all three defendants. Defendants were in direct contact with Sash Storm's clientele, and in fact helped Sash Storm build that clientele in the first instance. All three defendants were well acquainted with Sash 
Storm's internal structure, marketing methods, pricing structure and customer lists. Finally, all three defendants were intimately familiar with the inner workings of Sash Storm's product and the installation of that product. Therefore, based on the Supreme Court's decision in Rogers and the evidence adduced at the injunction hearings, we believe that the trial court's apparent conclusion that Sash Storm, Inc.'s interest was "minimal" was based on an erroneous interpretation of the law, and its subsequent reformation of the covenant to comport with that conclusion was therefore erroneous as well.
Sash Storm has established the existence and formal contractual validity of the covenant. Sash Storm I, at * 2-3. The evidence is uncontroverted that appellees are violating the covenant, and under Rogers Sash Storm has a legitimate commercial interest that it wishes to protect. Moreover, the restraint placed on appellees is not wholly disproportionate to what is necessary to protect Sash Storm's interest. Nor is the covenant on its face injurious to the public. Raimonde, 42 Ohio St.2d 21, paragraph two of the syllabus. Under these circumstances, a ruling on the injunction that is based on a declaration that the covenant is per se unreasonable and unenforceable is erroneous. Rather, the proper determination at this stage is whether the party seeking to enforce the covenant has met the burden of showing irreparable harm by clear and convincing evidence. Levine, 48 Ohio App.3d at 27. If that burden has been met then an injunction should issue. Id.
Reviewing the entire record under this test, we affirm the trial court's denial of the preliminary injunction as requested by Sash Storm. The record shows beyond any doubt that plaintiffs have failed to demonstrate irreparable harm by clear and convincing evidence, as is their burden under the three-prong test of Levine v. Beckman. However, merely because the party seeking to enforce the covenant has not met the high burden necessary for an injunction to issue does not mean that the covenant is unenforceable. In sum, it is eminently clear that the covenant at issue is reasonable and enforceable. However, any further action for its enforcement must be for money damages rather than injunction. To this extent only, Sash Storm's first assignment of error is sustained.
Sash Storm's second assignment of error is concerned with an order issued by the trial court on July 29, 1998, which reads in pertinent part as follows:
 The Court finds no good reason for the parties to conduct further discovery on remaining issues until the appeal period has transpired or the issues resolved [sic] on appeal.
 A protective order is granted to both parties and further discovery is stayed pending resolution of the trial court's decision of July 9, 1998.
Sash Storm contends that the trial court's issuance of this order was an abuse of discretion. However, its brief mischaracterizes the court's order and fails to cite any authority which supports its position. Furthermore, our reading of the order indicates that it will expire upon remand of this case. Under these circumstances, we will not interfere with the trial court's handling of discovery, especially absent any showing of substantial injustice to Sash Storm. See Shaver v. Standard OilCo. (1990) 68 Ohio App.3d 783, 800. Accordingly, Sash Storm's second assignment of error is overruled.
The judgment of the trial court denying the injunction is affirmed. However, for the reasons stated in our discussion of the first assignment of error, that portion of the trial court's judgment purporting to find the covenant not to compete unreasonable, limited to trade secrets and confidential information or otherwise unenforceable in an action at law is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
 BRYANT and HADLEY, JJ., concur.