Pfeifer, J.,
concurring in part and dissenting in part.
{¶ 50} One can hardly disavow the syllabus law in the majority opinion. It is good law, and it should be, though it is irrelevant to this case. I dissent from the *439 balance of the majority opinion aside from its recitation of the facts, upon which I will rely.
{¶ 51} The majority seems to have chased a red herring (“love and affection”) all the way upstream until it reached a dry creek bed. Love and affection were not offered in consideration of the June 2005 contract. Although the contract refers to a contemplated marriage, it never mentions love and affection.
{¶ 52} The record is replete with shadings and innuendo that there was no love and affection between the parties. The record includes statements that suggest or allege that Williams and Ormsby were searching for a way to continue living well without engaging in full-time work, that Williams was seeking to both delude and elude creditors, that Williams’s name may have been fraudulently signed on the quitclaim deed or that the person who notarized her signature did so without being present when Williams signed, that domestic-violence charges had been filed, and that each had promised not to accuse the other of domestic violence. That Williams wouldn’t move back into the house until Ormsby signed the agreement, which he wrote, was not offered as consideration and was not consideration. It was a simple fact of life — a fact that is outside the contract and is of no relevance.
{¶ 53} The resolution of this case should be straightforward. Among the consideration that Williams and Ormsby offered for the second agreement was the voiding of the first agreement, which denied to each of them rights that the first agreement granted. That either or both of them offered additional consideration is beside the point because we consider only the existence of consideration, not its adequacy. Judy v. Louderman, 48 Ohio St. 562, 29 N.E. 181 (1891), paragraph two of the syllabus (“While it is necessary that the consideration of a promise should be of some value, it is sufficient if it be such as could be valuable to the party promising; and the law will not enter into an inquiry as to the adequacy of the consideration, but will leave the parties to be the sole judges of the benefits to be derived from their contracts, unless the inadequacy of consideration is so gross as of itself to prove fraud or imposition.” [Emphasis added]); Rogers v. Runfola & Assocs., Inc., 57 Ohio St.3d 5, 6, 565 N.E.2d 540 (1991).
{¶ 54} Amber Williams and Frederick Ormsby entered into two contracts. The first was entered into in March 2005 “FOR VALUABLE CONSIDERATION that is mutually agreed upon” but unstated. (Capitalization sic.) Williams, Ormsby, their respective attorneys, the trial court, the court of appeals, and this court all agree that the March 2005 agreement is a valid, binding contract. The second contract was entered into in June 2005 “FOR VALUABLE CONSIDERATION that is mutually agreed upon” but unstated. (Capitalization sic.) The exact same consideration language is used in both contracts — yet it is *440 sufficient in one instance but not in the other. The parties are the same, the subject matter is the same, the consideration is stated the same way — but this court concludes that there is no consideration for the second contract.
L. Ray Jones, for appellee.
Laribee & Hertrick, L.L.P., Michael L. Laribee, and Chris D. Carey, for appellant.
{¶ 55} The first clause of the June 2005 contract resolves the issue before us. It states: “FOR VALUABLE CONSIDERATION that is mutually agreed upon, the AGREEMENT deems all other agreements concerning the items stated below to be null and void * * Could it be more clear? The March 2005 contract required that the house be sold and entitled Williams to, among other things, sales proceeds in excess of $324,000 and to live in the house until its sale. In consideration for giving up those rights, Williams entered into the June 2005 contract, which entitled her to different rights. How can it be argued that by voiding a contract that entitled her to specific rights, Williams was not offering consideration for the June 2005 contract, which entitled her to different rights? For instance, under the March agreement, if the property sold for $650,000, Williams would be entitled to $326,000; under the June agreement, she would be entitled to $325,000. If the property sold for $1,000,000, under the March agreement, Williams would get $726,000; under the June agreement, she would get $500,000. In that scenario, the March agreement benefits her considerably. Under the June contract, she also gives up the right to get proceeds from an immediate sale. Ormsby, meanwhile, under the June agreement does not have to vacate the house or pay Williams her equity portion to remain there — obligations of his under the March agreement. Under the June agreement, Ormsby gains more control over the timing of any sale of the house. For these benefits, he forfeits some equity in the house.
{¶ 56} I am convinced that Williams and Ormsby offered consideration for the second contract. The case is so fact specific and so riven with bizarre, if irrelevant, details, however, that it provides no meaningful guidance to the bench and bar. Accordingly, I believe that this case should be dismissed as having been improvidently accepted.
{¶ 57} I concur in the syllabus and dissent from the opinion and judgment.